**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF FLORIDA**

RINALDI ENTERPRISES OF FLORIDA,
LLC, a Florida limited liability company,                  Case No. 1-23-cv-21495

      Plaintiff,

v.

UNITED STATES FIRE INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY RELIEF, BREACH OF SURETY AGREEMENT AND OTHER RELIEF

Plaintiff, Rinaldi Enterprises of Florida, LLC,  ("REF" or "General Contractor"), by and through undersigned counsel and sue the Defendant, United States Fire and Insurance Company ("USFIC" or "Surety") and state:

### Parties, Jurisdiction and Venue

1.     This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§2201 and 2202.

2.     This action seeks a determination and declaration of respective rights and obligations of REF and USFIC under a Performance Bond[1] (*see* Ex. 1) in the penal sum amount of Four Million, Nine Hundred Seventy-Two Thousand, Five Hundred dollars ($4,972,500.00), in which REF is the obligee and USFIC is the surety, as well as damages which exceed $75,000, exclusive of interest, costs and attorney's fees, and this Court otherwise has jurisdiction over the subject matter hereof.

---

[1]     Exhibit 1 includes two bonds issued simultaneously: a Payment Bond and a Performance Bond.

3.     Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

4.     REF is a Florida limited liability company, with its principal place of business in the Southern District of Florida.  Anthony T. Rinaldi is the sole member of REF and he is a citizen of the state of Florida.

5.     USFIC is a corporation organized and existing under the laws of the State of Delaware, whose principal place of business is located in New Jersey.  USFIC is an insurance company and surety authorized to do business in the State of Florida.

6.     The Performance Bond relates to a construction project, which is located in the Southern District of Florida, and the breaches occurred in the Southern District of Florida. This Court otherwise has jurisdiction over the subject matter hereof.

7.     Venue is proper in this Court because the contract at issue in this case was to be performed in this jurisdiction.

### Factual Background

**a.     The Trade Contract and Performance Bond**

8.     REF, as General Contractor, entered into a Trade Contract Agreement ("Trade Contract" or "Construction Contract") on June 30, 2022[2] with Perez Structural, Inc. ("Perez" or "Trade Contractor"), for concrete shell construction and masonry on the project commonly known as i5 Wynwood located at 51 NW 28th Street, Miami, Florida 33127 (the "Project"). A true and correct copy of the Trade Contract is attached hereto as Ex. 2.

---

[2]     Perez commenced work on May 3, 2022, under a prior iteration of the Trade Contract, which was executed by Perez on March 4, 2022, and REF on May 26, 2022.  Due to revisions required by the Owner, the operative Trade Contract, (Ex. 2), which amended and restated all terms, was executed on June 30, 2022.  It still bears the original date of generation of January 21, 2022.

9.      The Trade Contract provides in relevant part:

### DEFAULT AND TERMINATION

Section 15.1. General Contractors Right to Stop the Work and Perform the Work in the Event of Default.

(a) In the event of Trade Contractor's default hereunder by its performance of defective work and/or its failure to perform any task required hereunder, the General Contractor may, without prejudice to any other remedy the General Contractor may have, upon forty-eight (48) hours prior written notice to the Trade Contractor, but shall not be obligated to, perform or cause to be performed such task and charge the Trade Contractor all cost and expenses incurred by the General Contractor or Owner or Architect in connection therewith. In such case, an appropriate change order shall be issued deducting from the payment then or thereafter due to the Trade Contractor all cost and expense incurred by the General Contractor or Owner or Architect in correcting such deficiencies and/or performing such task, including compensation for the Architect and its consultants and the Owner's other consultants for additional services made necessary by such default, neglect or failure. If the payments then or thereafter due to the Trade Contractor are not sufficient to cover such amounts, the Trade Contractor shall pay the difference to the General Contractor.

(b) If the Trade Contractor fails to correct defective Work as required elsewhere hereunder or persistently fails to carry out the Work in accordance with the Contract Documents, the General Contractor, by a written order signed by the General Contractor or its agent, may order the Trade Contractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, this right of the General Contractor to stop the Work shall not give rise to any duty on the part of the General Contractor or its agents to exercise this right for the benefit of the Trade Contractor or any other person or entity.

(a) Section 15.2. Failure to Perform. Should the Trade Contractor be adjudged bankrupt, or make a general assignment for the benefit of creditors, or should a petition under the Bankruptcy Act or under any other act relating to insolvency be filed by or against the Trade Contractor, or should a receiver be appointed on account of its insolvency, **or should Trade Contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen or of materials of the proper quality and quantity, or fail in any respect to prosecute the Work with promptness and diligence or fail in the performance of any of the obligations on its part herein contained, the General Contractor may, if the Trade Contractor fails to cure such default within three (3) days after receipt of written notice from the General Contractor**, in addition to any other rights provided hereunder or otherwise by law, stop the Work and/or discontinue the employment of the Trade Contractor hereunder and cause the Work to be performed and completed and deduct the cost thereof from any money due or thereafter to become due to the Trade Contractor for the said Work, and enter upon the premises and take possession of all materials, tools and equipment of every kind

whatsoever thereon, and employ any other person or persons to finish the Work, and to provide the materials therefor; and in case of discontinuance of the employment of the Trade Contractor, it shall not be entitled to receive any further payment under this Contract and, if the expenses incurred by the General Contractor in finishing the Work shall exceed the unpaid balance of the amount to be paid under this Trade Contract, the Trade Contractor shall pay the difference to the General Contractor. Upon the discontinuance of the Trade Contractor's employment hereunder, General Contractor may engage Trade Contractor's lower-tier trade contractors and suppliers to complete the Work.

(b) Trade Contractor shall be responsible for all direct and consequential damages arising from Trade Contractor's breach of this Trade Contract, including costs associated with any defects in Trade Contractor's Work.

Trade Contract, Article 15, Ex. 2. (Emphasis added).

10.     The Trade Contract further requires that Perez obtain a surety bond which "shall provide a direct right of action against the surety by a claimant." *See* Trade Contract at §6.8, Ex. 2.

11.     Pursuant to the Trade Contract, Perez, as principal, obtained Trade Contractor Performance Bond No. 6061033584 (the "Bond") from USFIC, as surety, for the benefit of REF, as obligee[3], in the penal sum amount of $4,972,500.00 to guarantee the performance of Perez under the Trade Contract for the Project. *See* Bond, Ex. 1.

12.     The Bond expressly incorporates the Trade Contract. *See* Bond at §1, Ex. 1.

13.     The Bond reads in pertinent part: "*§3 **The Surety's obligations under this Bond shall arise after the General Contractor declares a Trade Contractor Default** or terminates the Construction Contract **and notifies the Surety***." *See* Bond at §3, Ex. 1. (Emphasis added).

14.     The Bond goes on to state: "*§4 Failure on the part of the General Contractor to comply with the notice requirement in Section 3 shall not constitute a failure to comply with a condition precedent to the Surety's obligations, or release the Surety from its obligations*." *See* Bond at §4, Ex. 1.

---

[3]     The Owner of the Project is also an additional obligee.  *See* Bond, Ex. 1.

15.     USFIC's duties as surety are set forth therein. Specifically, §5 of the Bond provides:

§ 5 When the General Contractor has satisfied the conditions of Section 3, the **Surety shall promptly and at the Surety's expense take one of the following actions**:
§ 5.1 Arrange for the Trade Contractor, with the consent of the General Contractor, to perform and complete the Construction Contract;
§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;
§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the General Contractor for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the General Contractor and a contractor selected with the General Contractor's concurrence, to be secured with performance and payment bonds executed by the Surety or a qualified surety acceptable to the General Contractor equivalent to the bonds issued on the Construction Contract, and pay to the General Contractor the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the General Contractor as a result of the Contractor Default (the General Contractor's acceptance of such contractors or sureties shall not be unreasonably withheld); or
§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
    .1     **After investigation, which shall not exceed thirty (30) days after the date of the General Contractor's written notice declaring a Trade Contractor Default, determine the amount for which it may be liable to the General Contractor** and, as soon as practicable after the amount is determined, make payment to the General Contractor; or
    .2     Deny liability in whole or in part and notify the General Contractor, citing the reasons for denial, which reasons may include any defense available to the Trade Contractor under the Construction Contract.

*See* Bond at §5, Ex. 1. (Emphasis added).

16.     The Bond further provides that the Surety shall be liable for the following:

§ 7 If the Surety elects to act under Section 5.1, 5.2 or 5.3, then the responsibilities of the Surety to the General Contractor shall not be greater than those of the Trade Contractor under the Construction Contract, and the responsibilities of the General Contractor to the Surety shall not be greater than those of the General Contractor under the Construction Contract. Subject to the commitment by the General Contractor to pay the Balance of the Contract Price, the Surety is obligated, without duplication, for
    .1 the responsibilities of the Trade Contractor for correction of defective work, non-conforming work, latent defects in the work and completion of the Construction Contract;
    .2 additional legal, design professional and delay costs and damages specified or permitted under the Construction Contract resulting from the

Trade Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

.3 liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Trade Contractor, as well as all other damages specified in or permitted under the Construction Contract.

§ 8 If the Surety elects to act under Section 5.1, 5.3 or 5.4, the Surety's liability is limited to the amount of this Bond.

*See* Bond at §7, Ex. 1.

17.     If the Surety does not proceed with reasonable promptness to act in accordance with the provisions of §5, the Bond also states that:

§ 6 If the Surety does not proceed as provided in Section 5 with reasonable promptness, the Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the General Contractor to the Surety demanding that the Surety perform its obligations under this Bond, and the General Contractor shall be entitled to enforce any remedy available to the General Contractor. If the Surety proceeds as provided in Section 5.4, and the General Contractor refuses the payment or the Surety has denied liability, in whole or in part, without further notice the General Contractor shall be entitled to enforce any remedy available to the General Contractor.

*See* Bond at § 6, Ex. 1.

**b.  REF's Bond Claim**

18.     In the summer of 2022, the Project had begun, and Perez was performing under the Trade Contract.

19.     REF began seeing significant issues with performance almost immediately and, in July 2022, those came to a head.  The Project was well behind schedule and Perez was not performing its obligations.  Disturbingly, lower tier contractors, employees and laborers hired by Perez (collectively "lower tiers") began approaching REF staff and asking for help getting paid.  Manpower was woefully deficient and lower tiers would not come to the Project, citing nonpayment, or would appear and wait for payment or leave.

20.     Perez continuously failed to timely perform or meet its scheduled work deadlines.  Manpower shortfalls were and are a common occurrence. More recently, a significant portion of

Perez's work did not meet the performance criteria set forth in the Project plans and specifications and Trade Contract. These failures were compounded by Perez's late, out of sequence, unsafe, and poor installation of many items within its scope.

21.     In a letter dated August 3, 2022, REF served a "Demand to Cure / Notice of Default" on Perez (copying USFIC) (Ex. 3) stating that Perez had:

> [F]ailed to provide adequate project management and supervision in connection with its work at the Project.  Furthermore, due to Perez's inability to effectively manage its required suppliers and vendors, Perez has caused delays to the agreed upon schedule detailed in the Trade contract between Perez and Rinaldi Enterprises of Florida LLC, ("Rinaldi"). These delays are impacting other trade contractors, suppliers, and vendors.

*See* August 3, 2022, Notice of Default, Ex. 3.

22.     A lengthy list of default issues was included in that letter, which is too lengthy to excerpt here.  *See* August 3, 2022, Notice of Default, Ex. 3.

23.     REF's Notice of Default was sent via email and certified mail. *See* August 3, 2022, Notice of Default, Ex. 3.  The defaults were not cured and continue through the date of the filing of this Complaint. The August 3, 2022, default letter was followed by an additional default letter on August 30, 2022. *See* August 30, 2022, Second Notice of Default, Ex. 4.

24.     USFIC later acknowledged receipt of this Notice of Default.  *See infra*; Ex. 5.

25.     In August of 2022, the Project was significantly delayed and Perez lower tiers were refusing to work and/or not working. REF began reaching out to USFIC directly by email and telephone.  The representative from USFIC was (and is) Dan Hurrelbrink ("Hurrelbrink").

26.     On August 26, 2022, REF's Exec. V.P. / General Counsel ("Sciascia") spoke to Hurrelbrink about the issue.  The result was not the good faith adjustment of a claim.  USFIC's position, per Hurrelbrink, was that USFIC would not take any action because REF had not terminated Perez.

27.     Sciascia and Hurrelbrink reviewed and read §3 of the Performance Bond together:

"*§3 **The Surety's obligations under this Bond shall arise after the General Contractor declares a Trade Contractor Default <u>or terminates</u> the Construction Contract and notifies the Surety***". *See* Bond at §3, Ex. 1 (Emphasis added).  This did not change his position.  Sciascia requested a meeting in that discussion and later, in writing, "with you and others at [USFIC] that have the requisite authority to remedy the Perez defaults immediately."  That also did not happen.

28.     On August 26, 2022, Hurrelbrink was notified of the payroll issues within Perez through this forwarded text:

> After the 11am fiasco, Arturo [Carbonell, principal of Perez] never returned with the payment he committed to his guys. The men who refused to resume work earlier eventually packed up and left. Those who did stay and work finished pouring concrete on those columns.
>
> Arturo committed that Perez personnel was en route to the site with checks for the guys (around 2pm). The concrete crew hung around to wait and the Perez representative never showed up. Somewhere along the line a couple of foremen received checks that reportedly bounced.
>
> In summary, no one got paid, and it's highly unlikely we will have labor from Perez on Monday.

29.     This text was not an aberration, as these issues continue to occur.  USFIC did not change its position. Instead, it began requesting information from REF on August 30, 2022, which REF promptly provided.

30.     On August 30, 2022, REF sent a Supplemental "Demand to Cure / Notice of Default / Notice of Intent to Terminate" to Perez (Copying USFIC, and specifically, Hurrelbrink) attaching a copy of the August 3, 2022, Notice of Default which stated:

> In the event that the defaults outlined in the August 3, 2022 correspondence (which have only gotten worse) are not cured within three (3) days after your receipt of this notice, in addition to all remedies set forth in your subcontract agreement, and particularly in Section 15.1, Rinaldi may avail itself of the remedies in Section 15.2, including the termination of your contract.

31.     Again, the defaults were not cured.  During this time, USFIC did acknowledge (verbally) that the language in §3 requires the Surety to perform in the case of Trade Contractor default.

32.     By letter dated September 1, 2022, USFIC acknowledged receipt of REF's written notice of default sent on *August 3, 2022*.  *See* September 1, 2022, USFIC Response Letter, Ex. 5. Despite USFIC's knowledge of the various defaults, the letter disputed the claim, explaining that USFIC was not promising to perform or pay REF's claim and reserved all rights. *See id.* USFIC claimed that the information provided 29 days earlier was insufficient and requested information from REF, which was promptly provided. *See id.*

33.     Issues continued compounding.  USFIC slowly began dealing with the antecedent lower tier issues, but not the current ones and the Project issues continued unabated.

34.     On September 9, 2022, counsel for REF was forced to send a Notice of Surety Default to Perez and USFIC which stated:

> As you are both already aware, this firm represents Rinaldi Enterprises of Florida, LLC ("Rinaldi") in the above captioned. §1 of United States Fire Insurance Company's (the "Surety") Performance Bond states that Perez and the Surety are jointly and severally bound to Rinaldi in the above captioned. §3 dictates that the Surety's obligations arise after Rinaldi declares a default. That has happened. The Surety has not "promptly" complied with its obligations as defined under section 5, et. seq., of the Performance Bond provided by the Surety.
>
> In accordance with §6 of the Performance Bond, Rinaldi demands that the Surety perform its obligations under the bond within seven (7) days and continue to promptly perform. Rinaldi reserves all of its rights to hold the Surety in default as allowed by the Performance Bond and in accordance with Florida Law.

35.     Unfortunately, USFIC did not promptly or adequately comply with its obligations and the Project continues to suffer.

36.     REF's investigation confirmed what was already suspected – Perez's lower tiers remained unpaid in amounts exceeding $200,000.  USFIC was aware of these issues, but deficient in its attempts to identify all claimants and remedy Perez's cash flow issues as of September 14,

2022, despite *weeks* of being provided information by REF and gathering information from Perez and its lower tiers. The Project was falling further and further behind.

37.     In order to restart the work these lower tiers required payment.  USFIC was aware that Perez was in default of not just the Trade Contract, but also its payment obligations to its lower tiers.  REF is still being approached by lower tiers asking about payment and lower tier liens continue to be placed on the Project.

38.     Finally, on September 14, 2022, USFIC admitted that there was a shortfall (and therefore a breach of the Trade Contract) by approving an escrow of $200,000 to pay lower tiers. The initial escrow agent hired by USFIC was replaced and escrow was not immediately implemented, causing additional delay to the Project.

39.     As of September 23, 2022, USFIC alleged that it was still investigating the matter, and as of September 24, 2022, REF was dealing with lower tiers with issues such as bounced checks from Perez and the recording of a construction lien. The most recent lower tier lien was filed on March 6, 2023.

40.     REF has continuously asked for USFIC to perform, provide a plan to perform and recover lost time, and insisted that USFIC has joint and several liability with Perez under the Trade Contract (*see* Bond at §1, Ex. 1) to no avail.

41.     In addition, USFIC's position throughout the dispute was that it ***has not elected a remedy under §5 of the Performance Bond!***  Recall that § 5 requires that USFIC "promptly and at the Surety's expense take one of the following actions[]."  They are:

a)     §5.1 which, by all appearances was chosen – but which requires REF consent (never requested or given) – to arrange for Perez to complete, with financial backing from USFIC,

b)     §5.2 USFIC takes over and performs,

c)     §5.3 USFIC obtains a substitute contractor, a new contract is negotiated and USFIC pays REF the excess (damages) incurred,

d)     §5.4.1 pays the estimate of damages,

e)     §5.4.2 denies liability altogether.

*See* Bond at §5, Ex. 1.

42.     USFIC had not "officially" advised of its election.  REF notified USFIC repeatedly that it had not given consent to use Perez to complete under §5.1.

43.     On October 13, 2022, USFIC's counsel took the position that USFIC had, in essence, violated the terms of the Bond by not promptly taking one of the above actions, stating: "*Contrary to your suggestion,* [that USFIC was proceeding under §5.1 without REF's consent] *USFIC has not elected a remedy under the bond; however, it continues to provide financial assistance (through MDD) and technical assistance (through Beacon) to Perez  in the interim as Rinaldi has requested*."  This default has continued, *see infra*.

44.     On October 18, 2022, REF was forced to send yet another Notice of Surety Default. *See* October 18, 2022, Notice of Surety Default, Ex. 6.  In addition to demanding that USFIC perform within 7 days – as above – the notice went over in detail, issues that USFIC had ignored or denied, including the *de facto* election under §5.1 that USFIC denied that it had made:

> Under § 5.1 of the Bond, the General Contractor has the right to approve the use of the Trade Contractor to complete the work. As a result of numerous defaults which are continuing in nature and include serious life and safety issues, Rinaldi is considering whether to approve your continued use of Perez. On numerous occasions Rinaldi has requested a plan from the Surety demonstrating how the Surety and Perez intend to cure the numerous defaults, including resumes of additional staff, including supervisory staff, to enable Perez to accomplish the timely and safe completion of its scope of work. Although you have represented on numerous occasions that you intend to meet and discuss these matters internally and provide a plan, there has been no plan tendered and the only recovery schedules received to date are incorrect and show completion significantly past the contracted schedule completion date.
>
> Of immediate importance, the life and safety issues on the project persist unabated. We spent significant time going over those issues on yesterday's zoom call. The majority of the safety hazards recently identified, and which substantially adversely impacted Rinaldi's safety rating were caused by Perez. Rinaldi spends significant time giving directives to Perez and the Surety as a result, and Perez and the Surety simply do not react timely. As you are aware, a stop work order was issued yesterday until handrails were installed. This morning, the result was the picture attached. Basically – nothing happened. Rinaldi takes the health and welfare of the workers on the project extremely seriously. The other life and safety issues have also not been addressed, i.e., missing rebar caps, uncut post-tensioned cables

protruding into stairs, workers working without proper fall protection, controlled access zone marking for stripping activities. Life and safety issues must be addressed immediately, and Perez Structural is legally and contractually bound to comply with OSHA standards.

As discussed yesterday, the lack of centralized supervision is in large part causing this and other issues, as there is not one superintendent at the project for Perez who can direct labor, enforce safety practices, manage site logistics, and make decisions. This causes delays in implementation of the work, directives by Rinaldi, and the ordering of materials on Perez' part, as well as potentially pushing back the critical path. Another issue which was apparent was the lack of a complete recovery schedule to accelerate the work (again, safely and properly) which can actually be implemented because the one provided does not take into consideration the interaction of other trades and scopes, nor does it include all tasks required. As Mr. Ofili pointed out construction is not performed "in a vacuum".

You are all privy to Rinaldi's many emails and correspondence and know the many issues extant that – notwithstanding the lack of urgency being displayed by Perez and the Surety – continue to require attention that is not being paid. Failure to cure your current states of default will result in a significantly more expensive resolution of this matter.

45. On October 25, 2022, USFIC responded. *See* October 25, 2022, USFIC Response Letter, Ex. 7. The response was, at best, ill-advised and inaccurate, including both facts and the meaning of case citations and legal conclusions. For example, USFIC ignored the date of the initial Notice of Default to Perez, which had already been acknowledged by USFIC, in writing on September 1, 2022. *See* September 1, 2022, USFIC Response Letter, Ex. 5. USFIC (in addition to taking inaccurate factual positions relating to Perez's continued defective performance) changed its position that it was notified of the default on August 3, 2022, to a new position that a formal notice of default was required by the Performance Bond and was not provided or was insufficient. The Bond is clear on this issue. This alone constitutes a repudiation of USFIC's duties under the Bond, but also constitutes part of the basis of the declaratory judgment action, *infra.*

46. On November 3, 2022, REF responded to virtually every position taken by USFIC – all inaccurate – demanded performance and reminded USFIC that it, and Perez, continued to be in default. *See* November 3, 2022, REF Response Letter, Ex. 8.

47.     A meeting was held on November 4, 2022, at the jobsite.  Additional promises of performance were made, but ultimately not fulfilled.  Issues remained in many areas, including but not limited to:

a)     Manpower,
b)     Safety,
c)     Communication,
d)     Lien waivers,
e)     Pay requisitions,
f)     Supervision,
g)     Payment of lower tiers,
h)     The ability to perform, let alone accelerate, tasks provided for in the Trade Contract.
i)     Finally, USFIC's consultant ("Beacon") had difficulty controlling or directing the work, spent far too little time on the Project, and had limited grasp of how to perform the work, many of the issues being encountered on site – or simply parroted Perez's excuses for non-performance.  In fact, Beacon regularly made representations about site conditions and performance that were simply inaccurate.

48.     The issues continued.  REF continued to insist upon USFIC's performance, and on December 5, 2022, USFIC, through counsel, ***again*** stated "*USFIC has not elected its remedy under the bond and, as such, is not in a position to direct work under the bonded contract.*"   In other words, four months after being notified of the default and three months after acknowledging that notification, USFIC was not willing to commit to a remedy that it was required to exercise **promptly**.

49.     REF had been insisting on a meeting with USFIC decision makers at USFIC's home office in New Jersey, to which REF personnel would agree to travel.  Meeting dates in early to mid-December were agreed upon, but the meeting was abruptly cancelled by USFIC with limited prior notice to REF.  USFIC refused to reschedule the meeting.

50.     During that time period, REF continued to insist upon performance and sent daily emails detailing issues at the job site.  Finally sensing that they had to elect, USFIC informed that it intended to take over the project pursuant to § 5.2.  USFIC began circulating drafts of a "Takeover Agreement" which was not required by the Performance Bond to elect under §5.2, and

REF so advised.  While REF was willing to entertain such an agreement, the terms of same were never agreed to.  REF continued to take the position that USFIC was proceeding under §5.1 without consent and that USFIC was therefore in default.

51.     On January 9, 2023, REF sent such an email to USFIC.  REF stated clearly:

You are proceeding under the bond in accordance with Article 5.1. Perez is the trade contractor or record. This is a fact. And you have done so withOUT TRG consent. None of this is in dispute. For that reason ALONE [USFIC] is in default. More importantly, [USFIC] has not PERFORMED. The defaults have not been cured.

PLEASE PUT A PROPER TEAM ON THE PROJECT so the delays and defects do not get worse and perhaps some time can be made up. The status quo is NOT working.

52.     USFIC responded (in its entirety): "***That is false.  USFIC has elected to proceed under 5.2 of the bond****. It is my understanding that the revised take-over agreement was sent back to you late last week*."  (Emphasis added).   USFIC's statement of election was clear and unequivocal.  USFIC stated that it was ***not in default*** because it "has elected" – **past tense** – to proceed under §5.2.  USFIC later repudiated this clear statement of election, but it does not change the fact that three things were true: USFIC was in default for failing to elect (as it repeatedly posited); it does not change the fact that USFIC was in default for *de facto* electing §5.1 without consent; it does not change the fact that the statement was made and the repudiation of that election is also a default.  USFIC cannot have it all ways.  USFIC has attempted to capitalize on its intentionally vague suggestions of performance, and has in doing so, acted in bad faith.

53.     On January 19, 2023, through counsel, USFIC stated that: "*USFIC stands by its multiple communications to Rinaldi explaining that it has not elected 5.1, the terms of any 5.2 election are set forth in the proposed takeover agreement which to date Rinaldi has not accepted, and USFIC denies that Rinaldi has complied with the bond requirements and is in breach of the bond.*"

54.     As more fully set forth herein, USFIC unilaterally and without authority attempted to modify its responsibilities under the Performance Bond – breached the Performance Bond – in various ways throughout the Project, by failing to promptly elect under §5, by *de facto* electing under §5.1 without consent of REF, by rescinding its acknowledgement of the Notice of Default sent on August 3, 2022, by rescinding its election under § 5.2, by interfering in the administration of the Trade Contract generally, and by suggesting that the Performance Bond requires termination of Perez.

55.     Pursuant to §5 of the Bond, USFIC was to promptly elect a remedy and perform. USFIC did not elect to complete using Perez under §5.1 with REF's consent. USFIC posits that it has not elected this remedy at all despite its performance.  USFIC elected under §5.2 to take over and complete Perez's scope of work, but then repudiated that election.  USFIC did not obtain bids from contractors to complete Perez's scope of work or tender the damages in excess of the Trade Contract amount.  USFIC has not investigated the amount of damages resulting from Perez's defaults and tender payment.  USFIC has not denied the claim.

56.     USFIC has not adjusted this claim in good faith.  USFIC has chosen to deflect, deny and obfuscate Perez's defaults, which has exacerbated the problems. USFIC has not complied with the Trade Contract to which it is bound, including but not limited to failing to accelerate the work, add proper supervision, coordinate with REF, etc.

**c.     REF's Performance of Perez's Scope of Work.**

57.     As a result of USFIC's failure to promptly abide by the Performance Bond, specifically, but not limited to §5, REF was required to perform portions of Perez's remaining scope of work, augment safety staff and correct Perez's non-conforming work. *See* Trade Contract at §15, Ex. 2.

58.     USFIC is liable for such costs REF incurred for performing Perez's remaining scope of work, and correcting Perez's non-conforming work pursuant to §1 of the Performance Bond which states: "*The Trade Contractor and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the General Contractor for the performance of the Construction Contract, which is incorporated herein by reference*." *See* Bond at §1, Ex. 1.

59.     USFIC is liable for such costs REF has incurred for performing or causing to be performed Perez's remaining scope work, and correct Perez's non-conforming work pursuant to §15 of the Performance Bond which states, "*perform or cause to be performed such task and charge the Trade Contractor all cost and expenses incurred by the General Contractor or Owner or Architect in connection therewith*". *See* Bond at §15, Ex. 1.

60.     REF completed certain work which Perez failed to complete or complete properly due to its default of the Trade Contract. USFIC also failed to perform in accordance with its obligations under the Performance Bond.

## **Count I. Declaratory Relief**

61.     REF re-alleges all of the allegations contained in paragraphs 1 through 60 hereof, as if fully set forth herein.

62.     There is a bona fide present controversy between the parties covering the rights and obligations of USFIC and REF under the Bond.

63.     The Performance Bond provided that whenever REF declared Perez to be in default of the Trade Contract, USFIC "shall promptly and at the Surety's expense take one of the following actions, to wit:

> § 5.1 Arrange for the Trade Contractor, with the consent of the General Contractor, to perform and complete the Construction Contract;
> § 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the General Contractor for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the General Contractor and a contractor selected with the General Contractor's concurrence, to be secured with performance and payment bonds executed by the Surety or a qualified surety acceptable to the General Contractor equivalent to the bonds issued on the Construction Contract, and pay to the General Contractor the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the General Contractor as a result of the Contractor Default (the General Contractor's acceptance of such contractors or sureties shall not be unreasonably withheld); or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, which shall not exceed thirty (30) days after the date of the General Contractor's written notice declaring a Trade Contractor Default, determine the amount for which it may be liable to the General Contractor and, as soon as practicable after the amount is determined, make payment to the General Contractor; or

.2 Deny liability in whole or in part and notify the General Contractor, citing the reasons for denial, which reasons may include any defense available to the Trade Contractor under the Construction Contract.

*See* Bond at §5, Ex. 1.

64.　　REF sent its Notice of Default via certified mail to USFIC, declaring Perez in default of the Trade Contract on August 3, 2022. *See* August 3, 2022, Notice of Default, Ex. 3. USFIC acknowledged receipt of the claim on September 1, 2022. *See* Ex. 5. Additional Notices of Default were also sent and received. *See supra*.

65.　　USFIC did not respond to REF's Bond Claim pursuant to any of its options under §5 of the Performance Bond, and certainly did not do so promptly. As set forth above, in January 2023, USFIC posited that it had elected under §5.2, but repudiated that statement.

66.　　As a result of USFIC's failure to promptly abide by §5 of the Performance Bond, and also pursuant to Article 15 of the Trade Contract, REF was required to take action pursuant to the Trade Contract. REF was entitled to and did perform some of Perez's scope of work, correct Perez's non-conforming work, add safety monitoring, and charge the cost thereof to Perez. *See* Trade Contract at Art. 15, Ex. 2.

67.     USFIC is liable for all costs REF incurred for performing Perez's work, and correcting Perez's non-conforming work pursuant to §1 of the Performance Bond which states: "*The Trade Contractor and Surety, **jointly and severally**, bind themselves, their heirs, executors, administrators, successors and assigns to the General Contractor for the performance of the Construction Contract, which is incorporated herein by reference*." *See* Bond at §1, Ex. 1. (Emphasis added).

68.     As a result of USFIC's failure to timely abide by §5 of the Performance Bond and also pursuant to Article 15 of the Trade Contract, REF was entitled to contract with replacement trade contractor(s) to perform Perez's work and correct Perez's non-conforming work, and charge the cost thereof to Perez.  *See* Trade Contract at §15, Ex. 2.

69.     USFIC is liable for such costs REF incurred pursuant to §1 of the Bond. *See* Bond at §1, Ex. 1.

70.     REF incurred these costs itself and through third parties and used its own efforts to remediate Perez's defaults of the Trade Contract.

71.     REF incurred reimbursable costs and expenses which continue to be incurred, to remediate Perez's defaults of the Trade Contract.

72.     The Bond provides that the USFIC agreed to be liable for, among other things, the following:

.1      the responsibilities of the Trade Contractor for correction of defective work, non-conforming work, latent defects in the work and completion of the Construction Contract;

.2      additional legal, design professional and delay costs and damages specified or permitted under the Construction Contract resulting from the Trade Contractor's Default, and resulting from the actions or failure to act of the Surety under Section 5; and

.3      liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Trade Contractor, as well as all other damages specified in or permitted under the Construction Contract.

73.     REF has continually demanded performance. *See supra.*

74.     To date, USFIC has failed to promptly and completely comply with its obligations under the Bond, causing REF ongoing damage.

75.     Despite REF's written demands, and as more fully set forth herein, USFIC unilaterally and without authority attempted to modify its responsibilities under the Bond – breached the Bond – in various ways throughout the Project, by failing to promptly elect under §5, by *de facto* electing under §5.1 without consent of REF, by rescinding its acknowledgement of the Notice of Default sent on August 3, 2022, by rescinding its election under § 5.2, by interfering in the administration of the Trade Contract generally, and by suggesting that the Bond requires termination of Perez for failing to perform.

76.     Pursuant to §5 of the Bond, USFIC was to promptly elect a remedy and perform. USFIC did not elect to complete using Perez under §5.1 with REF's consent. USFIC posits that it has not elected this remedy at all despite its performance.  USFIC elected under §5.2 to take over and complete Perez's remaining scope of work, but then repudiated that election.  USFIC did not obtain bids from contractors to complete Perez's remaining scope of work and tender the damages in excess of the Trade Contract amount.  USFIC has not investigated the amount of damage resulting from Perez's defaults and tender payment.  USFIC has not denied the claim.

77.     REF has been damaged by USFIC's material breach of the Bond in significant amounts, including potential liquidated damages for late completion in amounts exceeding the jurisdictional limit of this Court, costs to complete which exceed the contracted for amounts in the Trade Contract for the scope of the work of Perez, plus other costs and expenses, including attorney's fees and interest, which REF will continue to accrue throughout the instant lawsuit. *See* Bond at §7, Ex. 1.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, REF, prays that this Court enter an order providing the following relief:

(a)     Declare that REF gave notice that Perez had defaulted and that this triggered USFIC's obligation to promptly choose an action to take §5 of the Bond;

(b)     Declare that USFIC breached the Bond by not promptly choosing an action to take under §5;

(c)     Declare that USFIC breached the Bond by *de facto* electing under §5.1 without the consent of REF;

(d)     Declare that REF was/is contractually entitled to hire replacement contractor(s) and/or use its own efforts to remediate Perez's default of the Trade Contract pursuant to the terms Trade Contract and Bond;

(e)     Declare that USFIC is liable to REF for its costs and expenses it incurred to remediate Perez's default of the Trade Contract pursuant to the terms Trade Contract and Bond, including attorneys' fees and interest pursuant to the Trade Contract and Bond in the amount that REF has and will incur, and any other amounts proven at trial; and

(f)     For such additional relief as this Court deems equitable and just.

**Count II. Breach of Performance Bond**

78.     REF re-alleges all of the allegations contained in paragraphs 1 through 60 hereof, as if fully set forth herein.

79.     The Bond is an enforceable written agreement for the benefit of REF, as obligee.

80.     The Bond provides that:

§ 5 When the General Contractor has satisfied the conditions of Section 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

§ 5.1 Arrange for the Trade Contractor, with the consent of the General Contractor, to perform and complete the Construction Contract;

§ 5.2 Undertake to perform and complete the Construction Contract itself, through its agents or independent contractors;

§ 5.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the General Contractor for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the General Contractor and a contractor selected with the General Contractor's concurrence, to be secured with performance and payment bonds executed by the Surety or a qualified surety acceptable to the General Contractor equivalent to the bonds issued on the Construction Contract, and pay to the General Contractor the amount of damages as described in Section 7 in excess of the Balance of the Contract Price incurred by the General Contractor as a result of the Contractor Default (the General Contractor's acceptance of such contractors or sureties shall not be unreasonably withheld); or

§ 5.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

.1 After investigation, which shall not exceed thirty (30) days after the date of the General Contractor's written notice declaring a Trade Contractor Default, determine the amount for which it may be liable to the General Contractor and, as soon as practicable after the amount is determined, make payment to the General Contractor; or

.2 Deny liability in whole or in part and notify the General Contractor, citing the reasons for denial, which reasons may include any defense available to the Trade Contractor under the Construction Contract.

*See* Bond at §5, Ex. 1.

81.     REF declared Perez to be in default of the Trade Contract and USFIC did not promptly elect the action it would take.

82.     USFIC is obligated jointly and severally with Perez under the Trade Contract. *See* Bond at §1, Ex. 1.

83.     Perez's and USFIC's defaults have caused the Project to fall behind.  Perez, and therefore USFIC are obligated to maintain the schedule and the contract price includes "material expediting and manpower overtime costs" in order to do so.  USFIC breached the obligations of the Trade Contract by failing to maintain the schedule.  REF is obligated to the owner to pay liquidated damages in the amount of approximately $350,000.

84.     REF has expended hundreds of thousands of dollars to both correct defective work and perform work Perez failed to timely perform.  There will likely be insufficient Trade Contract balance to recoup these damages.

85.     As a result of USFIC's failure to promptly abide by its obligations under the Performance Bond, and pursuant to Article 15 of the Trade Contract, REF was entitled to perform Perez's work and correct Perez's non-conforming work and charge the cost thereof to Perez. *See* Trade Contract at Art. 15, Ex. 2.

86.     USFIC is liable for such costs REF incurred for performing Perez's Trade Contract work, and correcting Perez's non-conforming Trade Contract work pursuant to §1 of the Performance Bond which provides for joint and several liability and §7 of the Bond which states, "the Surety is obligated […] for […] responsibilities of the Trade Contractor for correction of defective work, non-conforming work, latent defects in the work and completion of the Construction Contract." *See* Bond at §7.1, Ex. 1.

87.     REF hired third parties and used its own efforts to remediate Perez's defaults of the Trade Contract.

88.     The Performance Bond provides that the USFIC agreed to be liable for, among other things, the following: (1) correction of Perez's defective or incomplete work; (2) legal and design costs result from or arising from Perez's default or resulting or arising from the actions or failure to act of the USFIC under the Trade Contract and §5 of the Performance Bond; and (3) liquidated and delay damages. *See* Bond at §§ 1 and 7, Ex. 1.

89.     To date, USFIC has failed to remedy its defaults under the Performance Bond or fully or properly remedy Perez's defaults under the Trade Contract, let alone accelerating performance to meet the schedule.

90.    REF has been, and continues to be, damaged by USFIC's material breach of the Bond, plus other costs and expenses, including attorneys' fees and interest, which REF will continue to accrue throughout the instant lawsuit.

WHEREFORE, Plaintiff, REF, prays that the Court enter an order providing the following relief:

(a)    Declare that USFIC breached the Bond.

(b)    Enter judgment against USFIC and in favor of REF in the amount of REF's damages, plus all cost and expense, including attorneys' fees and interest pursuant to the Trade Contract and Bond, and Fla. Stat. § 627.756 in the amount that REF has and will incur, and any other amounts proven at trial; and

(c)    For such additional relief as this Court deems equitable and just.

Dated: April 20, 2023.

Respectfully submitted,

*Attorneys for Plaintiff*
LUBELL ROSEN, LLC
Museum Plaza, Suite 900
200 S. Andrews Avenue
Ft. Lauderdale, FL 33301
Telephone: (954) 880-9500
Facsimile: (954) 755-2993

By:    */s/ Marshall A. Adams*
Marshall A. Adams, Esquire
Florida Bar No. 712426
MAA@lubellrosen.com
Josh M. Bloom, Esquire
Florida Bar No. 88559
JMB@lubellrosen.com
Joshua H. Sheskin, Esquire
Florida Bar No. 93028
JHS@lubellrosen.com
George E. Dahdal, Esquire
Florida Bar No. 1031644
GED@lubellrosen.com
Secondary Email Address:
Breanna@lubellrosen.com